**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Crim. No. DLB-22-215** |
| **DERRELL LAMONT GARRISON,** | * | |
| **Defendant.** | * | |

### MEMORANDUM OPINION

Derrell Lamont Garrison is serving a 60-month sentence for possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and possession of controlled substances with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Garrison seeks a reduction in his sentence under 18 U.S.C. § 3852(c)(1)(A)(i) because "extraordinary and compelling reasons warrant such a reduction." For the following reasons, Garrison's motion for a reduction in sentence on compassionate release grounds is granted. Garrison's sentence is reduced to time-served plus seven days. Upon the expiration of the seven-day period, Garrison shall be released from custody and shall commence a three-year period of supervised release.

**I.      Background**

On February 8, 2022, Prince George's County police officers smelled burning marijuana emanating from Garrison's parked car in Temple Hills, Maryland. ECF 61-1, at 1. The officers searched Garrison's car and discovered a bag containing 9.588 grams of cocaine hydrochloride in the center console, torn pieces of the same bag in the driver side door panel, a bag containing 4.565 grams of cocaine base and 3.565 grams of fentanyl in the front console, and a bag containing 0.932 grams of fentanyl in the driver side door panel. *Id.* The officers conducted a pat-down search of Garrison and recovered a loaded pistol in his waistband. *Id.* Garrison had previously been

convicted of a crime punishable by more than one year and was not allowed to possess the firearm. *Id.* at 2. He admitted to police that he possessed the firearm and had a prior felony conviction. *Id.*

On August 11, 2022, Garrison was arrested pursuant to an arrest warrant issued in this case. *Id.* The arresting officers watched him drive, park, and exit a BMW, and during a search incident to arrest, they found $2,340 on him. *Id.* After they obtained a search warrant for the BMW, they found several baggies containing, in total, 6.961 grams of cocaine, 1.591 grams of cocaine base, and 5.033 grams of heroin/fentanyl, and a digital scale inside the vehicle. *Id.*

On January 24, 2024, Garrison pled guilty to Counts One and Two of the Indictment, which charged him with possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). ECF 61. Sentencing occurred on May 16, 2024. Garrison's guidelines range was 151 to 188 months' imprisonment. The government sought a sentence of 151 months. Garrison requested a 72-month sentence. The Court sentenced Garrison to 60 months' imprisonment and three years of supervised release on each count, with the sentences and supervised release terms to run concurrent. ECF 82. At the time of sentencing, Garrison had served approximately 23 months in custody.

On February 15, 2025, Garrison filed a motion for compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 94. The government opposes the motion. ECF 99. Garrison filed a reply in support of his motion. ECF 103.

## II.    Discussion

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022). However, the First Step Act, enacted in December 2018, permits courts to reduce a prison sentence

on a defendant's motion if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); First Step Act, Pub. L. 115-391 § 603(b), 132 Stat. 5239 (2018). The First Step Act requires the defendant to administratively exhaust his request before filing a motion for a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A). *Id.* If these criteria are met, the court must consider the applicable factors in 18 U.S.C. § 3553(a). *Id.*

### A. Exhaustion

As the government concedes, ECF 99 at 2, Garrison exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Title 18 U.S.C. § 3582(c)(1)(A)(i) does not define "extraordinary and compelling reasons." The United States Sentencing Commission's Policy Statement, as amended on November 1, 2023, states that "extraordinary and compelling reasons" for release exist when (1) the defendant has a terminal illness or a serious physical or mental health condition that substantially and permanently diminished the defendant's "ability . . . to provide self-care" or that requires "long-term or specialized medical care" that the prison is not providing, or there is or imminently will be an infectious disease outbreak or public health emergency at the facility where the defendant is housed, the defendant is at an increased risk of severe medical complications or death from exposure, and that risk cannot be mitigated; (2) the defendant is at least 65 years old and other criteria are met; (3) "the caregiver of the defendant's minor [or incompetent] child" dies or is incapacitated; the defendant's spouse, registered partner, parent, immediate family member, or other "individual whose relationship with the defendant is similar in kind" is incapacitated and there is no other available caregiver; (4) someone in custody or control of the defendant, while they were serving the sentence they seek to reduce, sexually abused them or caused "serious bodily

injury" from physical abuse; (5) "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)"; or (6) the defendant has served at least 10 years of an unusually long sentence. U.S.S.G. § 1B1.13(b)(1)–(6).

Garrison argues that he has shown extraordinary and compelling reasons for compassionate release under U.S.S.G. § 1B1.13(b)(3) and § 1B1.13(b)(5). *See* ECF 95, at 19–26. The government does not oppose a finding of extraordinary and compelling reasons under § 1B1.13(b)(5). *See* ECF 99, at 4–5. Under § 1B1.13(b)(5), the "other circumstances" prong, courts have "broad discretion . . . to consider a wide array of extraordinary and compelling justifications for release." *United States v. Brown*, 706 F. Supp. 3d 516, 519 (D. Md. 2023); *see also United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020) (noting, before § 1B1.13 was amended, the court makes a discretionary determination of whether extraordinary and compelling reasons justify reduction of a sentence). In this Court's view, this case presents a "combination of circumstances" that "are similar in gravity to" the reasons in § 1B1.13(b)(1)–(4). Extraordinary and compelling reasons for a reduction in sentence exist in this case.

On June 23, 2024, one month after Garrison was sentenced, his four-year-old son ("F.G.") drowned at a family pool party.[1] *See* ECF 94-2, at 2. This tragedy has devastated Garrison, F.G.'s mother ("J.H."), and their six-year-old son, M.G. The boys' mother, J.H., has struggled tremendously since F.G.'s death. Garrison reports that J.H. has expressed to him "that she

---

[1] Garrison has two young sons. Because they are minors, the Court refers to them by initials. Fed. R. Civ. P. 5.2(a)(3). And because the boys have the same initials ("A.J.G."), the Court will use the initials of their nicknames. The Court refers to the young boy who died as "F.G." and to his older brother as "M.G." The Court refers to their mother by her initials as well out of respect for her privacy.

contemplates taking her life" and has told him about "her inability to get out [of] the bed to care for [his] living child, [M.G.] due to depression." ECF 95-5, at 2. J.H.'s mother explains that J.H. "is suffering tremendously from the loss of her son. . . . There are days where she cannot get out of bed but ha[s] to force herself to for [M.G.]." ECF 94-1, at 4. Garrison submitted a letter from a clinical psychologist who evaluated J.H. *See* ECF 94-2. The psychologist conducted a clinical interview of J.H. and determined that she meets the criteria for Posttraumatic Stress Disorder and Uncomplicated Bereavement. *Id.* at 2. The doctor notes that J.H. "has had difficulty spending time with [M.G.] because he shares a strong physical resemblance to his brother, [F.G.]" *Id.* at 3. She has also "experienced worsening anxiety and panic attacks." *Id.* These attacks manifest when J.H. takes M.G. to school because it reminds her of taking F.G. and M.G. to school together. *Id.* As a result of her anxiety and panic attacks, J.H. has sometimes been unable to take M.G. to school, so his attendance during the Fall 2024 semester was poor. *Id.* at 3–4. The doctor reports that J.H. "has difficulty maintaining focus when engaging with [M.G.] and lacks the ability to concentrate for longer than a few minutes." *Id.* at 4. According to the psychologist, "[t]he present intensity of [J.H.'s] conditions have rendered her incapable of caring for herself and Mr. Garrison's living son, [M.G.]," and "the compassionate release of Mr. Derrell Garrison, and his physical presence at home would provide the vital emotional, social, and psychological support that [M.G.] requires at this time." *Id.* at 5.

Six-year-old M.G. is struggling to cope with his little brother's death. M.G.'s maternal grandmother writes that M.G. "is suffering from the loss of his brother and I worry about him as well." ECF 94-1, at 4. M.G.'s paternal grandmother echoes these concerns. She writes: "[M.G.] is showing signs of depression, anger, and hopelessness. Honestly, I worry about [M.G.] more than any of us." *Id.* at 3. A family friend writes that M.G. "is experiencing a deep sense of grief and

uncertainty." *Id.* at 10. Garrison's brother writes that M.G. "is struggling immensely with the loss of his brother. . . [M.G.] is showing signs of anger, irritability, and fear." *Id.* at 12. J.H. reported to the psychologist that M.G. had "an angry outburst" because, as M.G. then told her, he missed F.G. ECF 94-2, at 5. This outburst is M.G.'s way of expressing his grief. As the psychologist notes, "[M.G.] is at a development age where he does not yet have the language and abstract reasoning abilities to understand and express how he is feeling about the multiple adversities in his young life." *Id.*

Finally, the Court considers the impact that F.G.'s death has had on Garrison. He learned about his son's death while in transit to a BOP facility and was unable to attend the funeral and grieve with his family. In his mother's words:

> As a result of this sudden tragic loss Derrell is suffering silently with intense grief and guilt . . . . Derrell is facing difficulties with physiological issues and the inability to process grief due to the lack of resources available to him while incarcerated. There is no simpl[e] or easy way to explain our family's immense pain, aside from saying we are *broken*, the pain cuts like a knife and it doesn't go away.

ECF 94-1, at 3.

Most importantly for purposes of the pending motion, Garrison has been unable to take care of and support M.G. during this extremely difficult time. Before Garrison was incarcerated, he and J.H. shared joint custody of M.G. and F.G. and co-parented well together. *See* ECF 95, at 9; ECF 95-1, at 4 (statement of M.G. and F.G.'s maternal grandmother that "[e]ven when [J.H.] and Derrell separated they still managed to co-parent well together"). Garrison's demonstrated devotion to his sons was one of the reasons the Court imposed a below-guidelines sentence. *See* ECF 87, at 47:17–21 ("I have read the letters of his family and friends, and each one of them says that Mr. Garrison is kind, loving, generous, loyal, committed, compassionate, respectful, and a very good father."); ECF 72-3, at 5 (statement of Garrison's mother that "Derrell is an excellent

father, a big kid at heart. Derrell's days would consist of dropping his boys off to daycare, picking them up, reading to them, museum trips, parks and recreation and always church on Sunday's [sic]. Derrell is eager to redirect his focus towards the betterment of his life, and the life of his children and family."); *id.* at 9 (statement of Garrison's fiancée that "It is important to Derrell that he is active and present in the lives of his little boys. Derrell is a dedicated father and would like to re-enter the lives of his children as early as possible to reestablish the father-son bond that has been strained for the last nineteen months. Since his incarceration Derrell has done a fantastic job regularly communicating with his sons through video visits offered by the facility and through the twenty-minute phone calls. Although that is not enough, he makes it work. It is important for Derrell to be the father he wished he had growing up and being incarcerated almost makes it impossible."), *id.* at 12 (statement of Garrison's uncle that "Derrell is very family oriented and an excellent father to his sons. He wishes for the opportunity [to] provide and teach them the tough lessons of life."). Of course, no one could have imagined that, one month after sentencing, Garrison's four-year-old son would die. Garrison's and his family's circumstances have changed dramatically since sentencing. Garrison and his son M.G. need to be reunited sooner rather than later.

Garrison has shown extraordinary and compelling reasons for compassionate release under the "other circumstances" prong of U.S.S.G. § 1B1.13(b)(5). Garrison and J.H. have experienced every parent's worst nightmare. The aftermath of F.G.'s death has dramatically impaired J.H.'s ability to care for M.G., who, at only six years old, is struggling to cope with the death of his little brother. M.G. urgently needs his father.

### C.  Section 3553(a) Factors

Having found extraordinary and compelling reasons for compassionate release, the Court must consider the applicable factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Court carefully considered the 3553(a) factors at sentencing one year ago. They weighed in favor of a significant downward variance from the guidelines then, and they weigh in favor of a reduction in sentence now. Among the reasons for the variant sentence were Garrison's nonviolent criminal history, that he did not use or brandish the firearm during this crime, that he did not resist arrest, that he admitted guilt to police soon after his arrest, and that he accepted responsibility very early in this case. In addition, the Court considered that Garrison has struggled with drug and alcohol abuse his entire adult life. Garrison expressed profound remorse for his criminal conduct by his post-arrest actions, in his letter to the Court, and in his allocution. Additionally, Garrison had an army of supporters in the courtroom at sentencing, many of whom wrote letters in advance of sentencing, spoke at sentencing, and have written letters, again, in support of his request for compassionate release. They include his mother, his uncle, and his fiancée, who all advise the Court that they will support him when he is released from custody.

To be sure, Garrison's convictions for possession with intent to distribute cocaine, cocaine base, and fentanyl and for unlawful possession of a firearm are serious, and they deserve punishment. Garrison has been punished. By the time of his release, he will have served just over 36 months in custody.

As the government notes, Garrison has 13 criminal convictions. They are primarily for unlawful firearm possession and narcotics offenses. And Garrison has violated his probation or unsuccessfully completed probation many times. His criminal history and poor performance on supervision raise concerns that he may commit similar crimes again. However, as the Court noted

at sentencing, Garrison says he wants to change his life, and his post-offense actions indicate he is sincere. While in BOP custody, Garrison has obtained his GED and participated in the Residential Drug Abuse Treatment Program ("RDAP"). *See* ECF 94-8, at 4; ECF 103-2. Garrison's performance in RDAP has not been perfect, but as of May 28, 2025, he was in Phase III of the program and expected to complete it on July 21, 2025. *See* ECF 103-3.[2] Upon his release from prison, Garrison will have the support of his family to help him lead a law-abiding, sober life. He will live with his fiancée, who has a full-time job with a local court system, *see* ECF 94-1, at 5–6, and he has an employment opportunity with a local real estate firm, *see* ECF 94-6. He will attend grief counseling and substance abuse treatment. He must comply with the conditions of supervised release. With these structures in place, Garrison can focus on caring for his six-year-old son, M.G. So, even though Garrison has a significant criminal history, he now has a dire reason to avoid committing crimes and returning to prison.

Having considered the applicable factors in 18 U.S.C. § 3553(a), the Court finds that a reduction in Garrison's sentence to time-served plus seven days is appropriate.

### III.    Conclusion

Derrell Lamont Garrison's motion for compassionate release under 18 U.S.C. § 3852(c)(1)(A)(i) is granted. A separate order follows.

Date: <u>June 2, 2025</u>

<u>Deborah L. Boardman</u>
Deborah L. Boardman
United States District Judge

---

[2] Garrison currently is eligible for placement in a halfway house on April 9, 2026. *See* ECF 103-1.